UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SHORT,

               **Plaintiff,**               **CIVIL ACTION NO. 09-12323**

   **vs.**

                               **DISTRICT JUDGE PATRICK J. DUGGAN**

**SHERIFF DAN HINES, SGT.**     **MAGISTRATE JUDGE MONA K. MAJZOUB**
**WALKER, LT. CARMONEY,**
**ET AL.,**

               **Defendants.**
_____/

## REPORT AND RECOMMENDATION

**I.**      **Recommendation**

Defendants Rhonda Schultz, Nancy Yirku, Jackie Cox, Michael Burgess, D.O., and Coordinated Care, PLLC, (Defendants) have filed this motion for summary judgment on Plaintiff William Short's 42 U.S.C. § 1983, Eighth Amendment failure to provide adequate medical care claim against them. The Court has been referred this motion for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Because Plaintiff cannot establish the subjective component of the failure to provide adequate care analysis, this Court recommends that Defendants' motion for summary judgment be GRANTED. Plaintiff has also filed a motion to stay the proceedings until he is released on parole. Because the Court recommends that Defendants' motion for summary judgment be granted, it recommends that Plaintiff's motion to stay be DENIED as MOOT.

II.     **Report**

   A.     **Facts**

          i.     **The parties**

   Plaintiff is currently incarcerated at the Florence Crane Correctional Facility located in Coldwater, Michigan. (Dkt. 9.) But from November 21, 2008 until April 7, 2009, Plaintiff was an inmate at two facilities of the Jackson County Jail system: the Wesley Road and Chanter Road facilities.

   Defendants Coordinated Care and Dr. Michael Burgess contracted with Jackson County Jail to provide medical treatment for prisoners. (Defs.' Mot. for Summ. J. at 3.) At the time of Plaintiff's incarceration, Defendant Cox worked as a nurse and Defendants Schultz and Yirku worked as medical assistants for Defendant Coordinated Care. (*Id.*) Defendants either supervised or provided direct care to Plaintiff while he was incarcerated at Jackson County Sheriff's Department, at Wesley Road, and the Chanter Road facility, from November, 2008 until April, 2009. (Dkt. 20, Am. Compl.)

          ii.     **Plaintiff's claims and allegations**

   Plaintiff bases his claim off of Defendants' alleged failure to provide him the medications and services that were prescribed to him by the Veteran's Administration Medical Center (VAMC) before he was incarcerated. (Dkt. 70, Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. E, Pl.'s Aff.) Plaintiff states that the VAMC prescribed medications for his lower back pain, bipolar disorder, depression, chronic migraines, acid reflux, and high blood pressure.[1] (Pl.'s Aff. ¶ 5.)

   _____

   [1]Those medications included: Baclofen, Vicodin, Oxycontin, Flexeril, Naproxen, Acetaminophen, Risperdal, Divalproex, Atenolol, and Omeprazole, for his ailments. (Pl.'s Aff. ¶¶ 6-11.) Plaintiff has provided evidence that the VAMC did prescribe these medications. (Pl.'s

2

Plaintiff states that he informed Defendants that he was under the VAMC's "direct medical care" and that he received his prescription medication from it. (*Id.* ¶ 12.) During Plaintiff's intake into the Jackson County Sheriff's Department on November 21, 2008, he states that he filled out a questionnaire, on which he related that he was taking medications for his psychiatric problems. (*Id.* ¶ 13.) He states that he told Defendant Schultz about his psychiatric medication and that she responded that Defendants were going to contact the VAMC for his medical file.

On November 22, 2008, Plaintiff states that Defendant Schultz wrote in Plaintiff's medical file that he was taking Baclofen, Atenolol, Gabapentin, and Omeprazole. (Pl.'s Aff. ¶ 14.)

On November 24, 2008, Plaintiff was moved from the Wesley Road facility to the Chanter Road facility. (*Id.* ¶ 16.) A day later, Plaintiff maintains that Defendant Yirku told Plaintiff that he would not receive "his Baclofen, [or] any of his other pre[s]cribed medications for his mental disorders, back pain, and migraines." (*Id.* ¶ 17.) Plaintiff states that Defendant Yirku said that he would not receive these medications because of a Coordinated Care policy. (*Id.* ¶ 17.)

Instead of contacting the VAMC and following its plan, Plaintiff states that Defendants substituted their own "treatment plan under the false pretense [that] it was viable medical treatment." (*Id.* ¶ 20.)

Plaintiff states that Defendants used unacceptable alternative methods of treating his pain–such as giving him Tylenol to manage his pain. (*Id.* ¶ 22.) Plaintiff states that the Tylenol had no effect on controlling his seizures. (*Id.*)

Within a week of his arrival at the Chanter Road facility, Plaintiff met with a psychologist; she noted in her report that Plaintiff had a history of mental illness. (*Id.* ¶ 23.) Plaintiff states that

---

Resp., Ex. C.)

he met with the psychologist again a month later and again told her that the Tylenol was not easing his pain levels from his migraines. (*Id*. ¶ 25.)

On December 22, 2008, Plaintiff was transferred back to the Wesley Road facility. (*Id*. ¶ 27.) Plaintiff further alleges that this transfer was to silence his behavior–to stop complaining about not receiving his prescribed medications. (*Id.*)

As a result of not receiving his medication, Plaintiff states that he experienced severe symptoms: seizures, vomiting, head pain, equilibrium loss, cold sweats, fever, loss of appetite, and nausea. (*Id*. ¶ 28.) Plaintiff states these symptoms prevented him from "eating, sleeping, walking, going to the bathroom," and "pretty much everything he tried to do." (*Id.*)

On December 30, 2008, Plaintiff alleges that Defendants prescribed a sedative to him, so that he would acquiesce to his conditions. (*Id*. ¶ 31.) Plaintiff states that he had an "immediate allergic reaction" to the sedative and asked to stop taking it. (*Id.*)

On that same day, Plaintiff states that Defendants put him in the "tank" for five days, to again make him "acquiesce to the conditions of his confinement." (*Id*. ¶ 32.) While he was in the tank, Plaintiff alleges that he suffered seizures as a result of his lack of bipolar and depression medications. (*Id*. ¶ 33.)

Plaintiff further states that he suffered seizures due to withdrawal on February 18, 2009 and March 12, 2009. (*Id*. ¶ 34.) He states that Defendant Schultz failed to diagnose his seizures as a symptom of withdrawal from his medications. (*Id.*) He alleges that he suffered over twenty seizures total, each lasting several hours at a time, that were not recorded by Defendants. (*Id.*)

### iii.    Medical reports

Defendants have offered medical reports with the following information:

4

- November 22, 2008: on his intake report, Plaintiff stated he had a history of hypertension, depression, acid reflux, and back pain. The report indicates that Dr. Burgess instructed to hold the Baclofen until Defendants received information about Plaintiff's use of it from his family doctor. The report also indicates that Plaintiff was having his family bring in certain medications, although the report does not indicate which medications.

- November 23, 2008: Defendants received certain medications from Plaintiff's family, reviewed them, and "ok'd" them. The report shows that Defendants withheld the high blood pressure medication from Plaintiff because that medication had expired.

- November 25, 2008: Plaintiff was asking about his blood pressure medication. The report indicates that Defendants "have set his [medication] up and [] he will be getting it." The report states that he will not be getting his Baclofen for his back pain. The report further states that Plaintiff "stated that the Tylenol is helping" Plaintiff's back pain.

- December 1, 2008: Plaintiff was experiencing general aches and pains and requested a Tylenol refill. The report shows that Defendants refilled the Tylenol.

- December 7, 2008: Plaintiff requested an appointment with Community Mental Health, but did not exhibit an intent to harm himself or others. The report also shows that Plaintiff was not in acute distress.

- December 9, 2008: Plaintiff requested and was granted a medical change for his acid reflux medication–he requested to take the medication once a day instead of twice.

- December 13, 2008: Plaintiff requested and received Tylenol for his pain. The report further shows that Plaintiff was in no acute distress.

- December 22, 2008: Plaintiff was bullying a Community Mental Health staff member "to get him an extra mat and his medications." The report indicates that Defendants would observe Plaintiff.

- December 30, 2008: Plaintiff again requested a Community Mental Health appointment. In that request, he also complained of a sore on his skin. The report indicates that Plaintiff was placed on the Community Mental Health list, was supplied with bandages and medication for the sore on his skin, and was allowed to have the bottom bunk bed due to his back pain. On that same day, Plaintiff also requested more Tylenol for his back pain.

- January 2, 2009: Plaintiff complained of diarrhea due to his Trazadone medication, and was allowed to stop that medication.

- January 5, 2009: Plaintiff had an episode and the prison officials called the medical staff because Plaintiff was on his cell floor, drooling and huffing. The medical staff found that he was oriented, cooperative, and in no acute distress. The report indicates that Plaintiff was

able to get up off the floor and sit on a bench without assistance.

- January 9, 2009:  Plaintiff was given a refill of Tylenol due to a toothache.

- January 18, 2009:  Defendants received medications from Plaintiff's family, reviewed and approved the medications.

- January 20, 2009: Defendants again received medications from his family that they approved and set up.

- January 22, 2009: Plaintiff requested to take his acid reflux medication once daily; Defendants approved the request.

- February 4, 2009: Plaintiff wrote "need aspirin–bad headaches. No need to see you."

- February 5, 2009: Plaintiff refused to see a nurse for a blood pressure check.  He also was given more Tylenol on that day.

- February 18, 2009: Plaintiff had another migraine episode.  The report shows that Plaintiff was on the floor, sweating and vomiting, complaining of a migraine.  The report further indicates that Defendant Schultz advised the officer that she would need to see Plaintiff in the clinic and that she was going to check on him the following day.

- February 19, 2009:  Plaintiff no longer experienced any headache or pain.

- February 20, 2009: Plaintiff had a headache again and requested more Tylenol.

- March 6, 2009: Plaintiff received more Tylenol.

- March 12, 2009: Plaintiff reported that he had another migraine.

**B.      Summary judgment standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the

6

assertion by:
(A) citing to particular parts of materials in the record, including depositions,
documents, electronically stored information, affidavits or declarations, stipulations
(including those made for purposes of the motion only), admissions, interrogatory
answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce admissible evidence to
support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly

support or address a fact:

If a party fails to properly support an assertion of fact or fails to properly address
another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the
facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other

materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than

simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric*

*Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must

determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587,

drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v.*

*Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

7

C.       **Analysis**

Plaintiff argues that Defendants violated his Eighth Amendment constitutional right to adequate medical care when they failed to give him specific medication for his back pain, denied him physical therapy prescribed by the VAMC, and failed to give him medications prescribed by the VAMC.  Because Plaintiff fails to show that Defendants harbored the necessary subjective component showing deliberate indifference to a serious medical need, Plaintiff's claim fails.

1.       **Failure to provide medical treatment standard**

To establish a constitutional violation of the right to adequate medical care, a plaintiff must prove two components–one objective, the other subjective.  *Jerauld ex rel. Robinson v. Carl*, No. 09-5714, 2010 WL 5439796, at \*5 (6th Cir. Dec. 30, 2010).

The objective component requires a plaintiff "to allege facts showing that the medical need at issue [wa]s sufficiently serious."  *Id.*  (internal quotation marks and citation omitted).  A plaintiff can show that a medical need was sufficiently serious by alleging facts that "show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004).  A plaintiff can also show that is medical need is "objectively seriously" if the medical condition is "one that has been diagnosed by a physician as mandating treatment."  *Id*. (citation, quotation marks, and emphasis omitted).

The subjective component requires a plaintiff to "allege facts which, if true, would show that (1) the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, (2) that he did in fact draw the inference, and (3) that he then disregarded that risk."  *Id*.

8

(internal quotation marks and citation omitted).  A plaintiff can satisfy the subjective component by showing that the officer or official was deliberately indifferent to the plaintiff's serious medical needs.  *Cain v. Irvin*, 286 F. App'x 920, 926 (6th Cir. 2008) (citation omitted). "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Jerauld ex rel. Robinson*, 2010 WL 5439796, at *5 (internal quotation marks and citations omitted).

### a.    Objective component

Here, Defendants do not address in depth the objective component of the analysis.  They argue that there is no evidence that Plaintiff's back pain was sufficiently serious.  (Defs.' Mot. for Summ. J. at 3.)  But the Court finds that Defendants have not proven this component, for they have not addressed Plaintiff's previous prescriptions.  *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004) (holding that a plaintiff can also show that is medical need is "objectively seriously" if the medical condition is "one that has been diagnosed by a physician as mandating treatment.").  For the purpose of this motion, the Court finds that Plaintiff has satisfied the objective component.

### b.    Subjective component

Plaintiff argues that he has shown the subjective standard through Defendants' failure to contact the VAMC and failure to issue the prescribed medicine he had with him or that his family members brought in.  Plaintiff also argues that Defendants had specious reasons for not giving his prescriptions to him, although he does not expand on these reasons.  (Pl.'s Resp. at 4.)

Defendants argue that the medical records "demonstrate the opposite of wanton conduct[,]

9

and instead show continuous medical care and proper treatment as the result of appropriate examination, testing, and medication." (Defs.' Mot. for Summ. J. at 11.)

The Court agrees with Defendants. The evidence does not indicate that Defendants were deliberately indifferent to Plaintiff's needs. The evidence–the medical records–suggests that Defendants responded to each of Plaintiff's requests. But Plaintiff argues that his constitutional rights were violated when Defendants did not give him his previous medications based on Defendants' policy and when they substituted their own plan for that of the VAMC's.

Despite Plaintiff's adequacy of treatment argument, a medical plan change generally does not constitute a constitutional violation. *See Dotson v. Phillips*, 385 F. App'x 468, 471 (6th Cir. 2010) (stating, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law;" and "[the plaintiff's] claim fails because he can only allege negligence, not deliberate indifference, as prison medical personnel provided care to him at every stage of his injury."). *See also White v. Corr. Med. Servs., Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("Any perceived deficiencies in [the plaintiff's treatment] amount to only negligence or a difference of opinion."). Nor can Plaintiff succeed with his argument that Defendants' policy to not give certain medications to him because giving so would violate prison policy; for Plaintiff has failed to show that the policy, as applied to him, was unconstitutional. See *French v. Daviess Cnty, Ky.*, 376 F. App'x 519 (6th Cir. 2010) (where the plaintiff alleged that the blanket jail policy prohibiting narcotics and Xanax showed that the "jail officials were deliberately indifferent in their direct care." *Id*. at 523. The Sixth Circuit recognized that one lower court had found summary judgment inappropriate when a jail utilized a written, blanket policy forbidding prescribed narcotics. *Id*. But the Sixth Circuit held that the plaintiff had failed to show that the

10

policy "was unconstitutional as applied to him," and rejected his claim.  *Id*.  The Sixth Circuit ultimately stated that "[t]he material facts indicate that the doctors and prison staff were attempting to act in the best interests of the prisoner and did not disregard his well-being or make any significant mistake by disregarding a known risk of injury."  *Id*.).

Here, the medical records evidence shows that Defendants were responsive to Plaintiff's medical requests and needs.  Just because Plaintiff does not agree with the medications Defendants prescribed and treatment given does not give him a successful Eighth Amendment claim.

From Plaintiff's requests, he only requested Tylenol or Aspirin; Plaintiff has not produced evidence that Defendants did not give him what he requested.  And even if he did request other medications, varying a medical treatment plan does not give rise to a constitutional violation.

The Court therefore finds that Plaintiff has not produced evidence that Defendants had the requisite culpable state of mind.  Plaintiff has not shown that Defendant "subjectively perceived facts from which to infer a substantial risk to [Plaintiff,]" that Defendants drew that inference and then disregarded the risk to Plaintiff.  Defendants have provided medical records that show that they paid attention to Plaintiff's medical needs.

Plaintiff therefore cannot satisfy the subjective component; and his claim fails.

**D.      Conclusion**

For the above-stated reasons, the Court recommends that Defendants' motion for summary judgment be GRANTED.  Because the Court recommends granting Defendants' motion for summary judgment, it also recommends DENYING as MOOT Plaintiff's motion to stay.

**III.   Notice to Parties Regarding Objections**

11

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: October 7, 2011                            s/ Mona K. Majzoub
                                                  MONA K. MAJZOUB
                                                  UNITED STATES MAGISTRATE JUDGE

12

### **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon William Short and Counsel of Record on this date.


Dated:  October 7, 2011                           s/ Lisa C. Bartlett _____

                                                  Case Manager